510 42nd St. Lender LLC v Merchants Hospitality, Inc. (2025 NY Slip Op 50417(U))

[*1]

510 42nd St. Lender LLC v Merchants Hospitality, Inc.

2025 NY Slip Op 50417(U)

Decided on April 2, 2025

Supreme Court, New York County

Chan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 2, 2025
Supreme Court, New York County

510 42nd Street Lender LLC, Plaintiff,

against
Merchants Hospitality, Inc. and SAND HOLLOW RESORT L.L.C., Defendants.

Index No. 650210/2024

Counsel for Plaintiff: Jed M. Schwartz of Milbank LLP
Counsel for Defendant Sand Hollow Resort L.L.C.: Barry E. Lichtenberg of Lichtenberg PLLC
Counsel for Defendant Merchants Hospitality, Inc.: Mark J. Alonso of Alonso & Facher, P.C.

Margaret A. Chan, J.

The following e-filed documents, listed by NYSCEF document number (MS001) 2, 21, 46, 56, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 121, 122, 123, 124, 125, 128, 129, 130, 131, 141, 146, 149, 150, 153, 155, 159 were read on this motion to/for JUDGMENT - SUMMARY IN LIEU OF COMPLAINT.
The following e-filed documents, listed by NYSCEF document number (MS002) 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 44, 45, 57, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 126, 132, 133, 134, 135, 142, 147, 151, 152, 154, 156, 160 were read on this motion to/for ORDER OF ATTACHMENT
In this action, plaintiff 510 42nd Street Lender LLC (plaintiff or Lender) seeks to recover money purportedly due and owing from defendants Merchants Hospitality, Inc. (Merchants) and Sand Hollow Resort LLC (Sand Hollow) (together, defendants or Guarantors) pursuant a guaranty. Now before the court are two motions. In MS001, plaintiff moves, pursuant to CPLR 3213, for summary judgment in lieu of complaint against defendants in the sum of $66,443,010.14, as well as its costs of collection, due under the guaranty (NYSCEF # 21). And in MS002, plaintiff moves, by order to show cause, for a pre-judgment order of attachment against Sand Hollow, as well as pre-judgment disclosure (NYSCEF # 44). Both defendants oppose plaintiffs' motion for summary judgment in lieu of complaint, and Sand Hollow [*2]separately cross-moves for summary judgment dismissing this action (NYSCEF # 75). Sand Hollow also opposes plaintiff's motion for a pre-judgment order of attachment. The court held oral arguments on plaintiff's motions and Sand Hollow's cross-motion on December 17, 2024, reserving its decision at the conclusion of the hearing (NYSCEF # 159 at tr 44:6-10).
This Decision and Order now follows. For the following reasons, plaintiff's motion for summary judgment in lieu of complaint is granted, defendant Sand Hollow's cross-motion for summary judgment is denied, and plaintiff's motion for a pre-judgment order of attachment is denied as moot.
Background
The following facts are drawn from the affirmations and exhibits submitted in connection with plaintiff's motion for summary judgment in lieu of complaint.
The Hotel and the Loan
This dispute arises out of efforts to finance the renovation and development of the Cachet Boutique Hotel (the Hotel), located at 510 West 42nd Street, New York, New York 10036 (the Property) (NYSCEF # 4 — Sitman aff ¶ 6; see also NYSCEF # 76 — Bracken aff ¶¶ 3, 17). The Property is subject to a ground lease, dated October 1, 2009 (the Ground Lease), by and between West 42nd Street Developers, as landlord (the Landlord), and, following an assignment, dated as of April 28, 2017, 510 W42 Holdings LLC, as tenant (Tenant) (see Sitman aff ¶ 6; Bracken aff ¶¶ 15-16; NYSCEF # 8; NYSCEF # 82).
This assignment to Tenant occurred following the acquisition of the Hotel by a joint venture between Robert Roche, an owner and manager of various resorts and hotels, and his related entities, and certain affiliates of Merchants, a New York-based hospitality company that provides branding and booking services (see NYSCEF # 60 — Cohn aff ¶¶ 2-3, 6). As part of this acquisition, Tenant, 510 W42 Holding LLC, and 512 W42 Retail LLC (collectively, Borrower) invested approximately $18 million and borrowed $30 million (id. ¶ 3; NYSCEF # 61). The goal of the joint venture was to convert the Hotel into a "boutique Hotel, a Playboy nightclub, and a restaurant" (Cohn aff ¶ 7). Although Merchant, through its affiliates, held a majority interest, Roche and his entities controlled the Hotel's day-to-day operations (see id. ¶¶ 4-5, 8).
The Hotel struggled in the years after this acquisition. For this reason, in 2019, Roche decided to acquire additional funds to revive the business, including by refinancing the debt used to acquire the Hotel (see Cohn aff ¶¶ 9-10). To facilitate the Hotel's funding, on June 7, 2019, Borrower and Lender entered into a Loan Agreement (the Loan Agreement) in which Lender agreed to provide Borrower with a loan in the original principal amount of up to $42,000,000.00 (the Loan) (Sitman aff ¶ 3; Bracken aff ¶ 17; NYSCEF # 5 — LA at 1). The Loan was secured by a Consolidated, Amended and Restated Leasehold Mortgage, Assignment of Leases, Rents and Hotel Revenue, Security and Fixture Filing, dated as of June 7, 2019, between Lender and Borrower (Sitman aff ¶ 4; Bracken aff ¶ 17 [c]; NYSCEF # 6). And to evidence the Loan, Borrower executed and delivered to Lender a Consolidated, Amended and Restated Promissory Note in the original principal amount of $42,000,000.00 (the Note) (Sitman aff ¶ 5; NYSCEF # 7).
The total amount of the Loan actually disbursed to Borrower was $40,000,000.00 (see NYSCEF # 128 — Sitman Reply aff ¶ 2; NYSCEF # 129). Borrower, in turn, agreed to "pay to Lender . . . on the Maturity Date the Outstanding Principal Balance, all accrued and unpaid [*3]interest and all other amounts due hereunder and under the Note, the Security Instrument and the other Loan Documents" (LA §§ 2.2.1, 2.3.3). The "Maturity Date" of the Loan was December 7, 2020 (id. § 1.1, "Stated Maturity Date"). Interest under the Loan Agreement would be calculated "by multiplying (a) the actual number of days elapsed in the period for which the calculation is being made by (b) a daily rate based on the Interest Rate and a three hundred sixty (360) day year by (c) the Outstanding Principal Balance in effect for the applicable period" (id. § 2.2.2). The applicable interest rate was set at the London Interbank Offered Rate (LIBOR Rate)[FN1]
(see id. § 2.2.3 [a]-[b]). However, if upon the occurrence of an Event of Default, interest would accrue at the Default Rate "equal to the lesser of (a) the Maximum Legal Rate and (b) five percent (5%) above the Interest Rate" (id. §§ 1.1, "Default Rate," 2.2.4).
In addition to these repayment terms, Borrower agreed to "pay all rents, additional rents and other sums required to be paid by Borrower, as tenant under and pursuant to the provisions of the Ground Lease, as and when such rent or other charge is due and payable" (id. § 5.7.1 [a]). Borrower acknowledged that it would not, "without the prior written consent of Lender, surrender the leasehold estate created by the Ground Lease" or otherwise "terminate or cancel the Ground Lease or assign, modify, change, supplement, alter or amend the Ground Lease" (id. § 5.7.2). Finally, the parties agreed that "[n]o modification, amendment, extension, discharge, termination or waiver of any provision of this Agreement, or of the Note, or of any other Loan Document . . . shall in any event be effective, unless the same shall be in a writing signed by the party against whom enforcement is sought" (id. § 10.4).[FN2]

The Guaranty
On the same day Borrower entered into the Loan Agreement, Sand Hollow—a Utah-based company purportedly affiliated with Roche (Sitman aff ¶ 8; Bracken aff ¶ 4; Cohn aff ¶¶ 4, 15)—and Merchants (Sitman aff ¶ 9) jointly and severally delivered to Lender a Guaranty of Recourse Obligations (the Guaranty) (Sitman aff ¶ 7; NYSCEF # 9 — Guaranty at 1). Under the Guaranty, Guarantors agreed, as "primary obligor[s]," to "irrevocably and unconditionally guarantee[] to Lender . . . the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable" (Guaranty § 1.1).
These "Guaranteed Obligations" in the Guaranty were "any Losses arising out of or in connection with the occurrence of any event set forth in Section 3.1(b) of the Loan Agreement" or, as relevant here, "payment of the entire amount of the Debt from and after the occurrence of any event set forth in Section 3.1(c) of the Loan Agreement" (LA § 1.2).[FN3]
Applicable events [*4]under Section 3.1(c) of the Loan Agreement included, among other occurrences, (1) "Borrower, Principal or Guarantor . . . admitting, in writing or in any legal proceeding, its insolvency or inability to pay its debts as they become due," or (2) "any surrender by Borrower, Principal, Guarantor or any Affiliate of any of them of the leasehold estate created by the Ground Lease" (id. § 3.1 [c] [vi], [xii]).
If Guarantors failed to "timely perform any provisions of th[e] Guaranty," including the "Guaranteed Obligations," then Guarantors were required to pay "the applicable Guaranteed Obligations" and "all out-of-pocket costs and expenses (including court costs and attorneys' fees and costs) incurred by Lender or its successors or assigns in the enforcement hereof or the preservation of Lender's rights" (see Guaranty § 1.9). The parties further agreed that "[n]o modification or waiver of any provision of this Guaranty, nor consent to departure therefrom, shall be effective unless in writing" (id. § 6.1).
Purported Forbearance Negotiations
Both Sand Hollow and Merchants acknowledge that, in early 2020, Roche allegedly entered into forbearance negotiations to avoid a default under the Loan Agreement (see Cohn aff ¶ 17; Bracken aff ¶¶ 21-24). According to Sand Hollow's manager, Jake Bracken, Borrower first offered to surrender the Hotel to Lender, which was rejected, and thereafter the parties began negotiating forbearance (see Bracken aff ¶¶ 21-23; NYSCEF # 87). Bracken asserts that Sand Hollow and Lender reached an alleged consensus on several purported points, including that (1) Sand Hollow and Lender would pay all costs and charges related to the Ground Lease, (2) Lender would not issue a notice of default on the Loan and seek to enforce the Guaranty, and (3) Lender acknowledged that Sand Hollow would sell and transfer assets when necessary and as part of normal business operations (id.). Following this purported "consensus," Bracken asserts, "sums in excess of $4,000,000.00 per year [were] paid for rent, charges, maintenance, taxes and upkeep of" the Hotel and Property over the next three years (id. ¶ 26). Ultimately, Bracken explains, a forbearance agreement was never executed (see id. ¶ 24).
For its part, Merchants "clearly and adamantly repudiated" these forbearance negotiations because it refused to agree to an additional, extended guaranty that would increase its liability as a Guarantor (see Cohn aff ¶¶ 18, 22-23; NYSCEF #s 68, 70). Instead, Merchants advocated for a sale of the Hotel before it had to incur a "huge" Debt Yield payment under the terms of the Loan Agreement that was due on March 31, 2020 (Cohn aff ¶ 21). Merchants' efforts to sell, however, were disregarded, and instead it was excluded from forbearance negotiations and denied access to documents about the Hotel and the Property (see Cohn aff ¶¶ 17, 19, 21, 24-26). Relying on apparent references to a "Mailman Trust guaranty" disclosed in a July 9, 2020, email, Merchants speculates that Lender and Borrowers may have designated a new guarantor for the Loan in addition to other new/updated terms (see id. ¶¶ 19, 21, 24; NYSCEF # 69).
The Alleged Defaults
As alleged, beyond five monthly interest payments (Sitman Reply aff ¶ 3; NYSCEF # [*5]130 at 1-2),[FN4]
Borrower failed to pay back the Loan and any other accrued interest (Sitman aff ¶¶ 11-12). Eventually, on December 4, 2023, Lender received a letter from Borrower representing that it "lacked sufficient funds to satisfy its obligations in connection with the [Hotel] and under Loan Agreement" (NYSCEF # 10 at 1). Borrower further noted that it had "reached the conclusion that its leasehold interest in the [P]roperty . . . no longer ha[d] value" (id.). As a result, Borrower concluded, Borrower planned to "tender[] the Leasehold to the [Landlord]" (id.). Two days later, on December 6, 2023, Tenant, by letter, "advised" Landlord that Tenant had "recently ceased operating the [Hotel] located at [the Property]" and was, "[e]ffective immediately . . . surrendering the Property to [Landlord]" (NYSCEF # 14 at 1). Six days later, on December 12, 2023, the Landlord circulated a "Notice of Default and Surrender of Lease" that (1) reiterated that Tenant was in breach of its "obligation to pay Basic Rent as provided in the Lease" and (2) acknowledged that Tenant had "surrendered possession of the Property" (NYSCEF # 15 at 1-2).
Meanwhile, on December 5, 2023, counsel for Lender notified Borrower and Guarantors that an Event of Default had occurred under Section 8.1 of the Loan Agreement and that Lender was entitled to exercise all available rights and remedies available to it (NYSCEF # 11 at 2-3). Lender further notified Guarantors that, due to Borrower's admission of insolvency and/or inability to pay its debts, as well as its anticipated surrender of the Ground Lease, the "Guaranteed Obligations" had been triggered under Section 1.2 of Guaranty and thus Guarantors were liable to pay the full amount of the Loan (NYSCEF #s 11-13 at 2-3). Lender later notified Borrower and Guarantors by acceleration notice, dated December 13, 2023, that, due to the Events of Default that had occurred and were continuing, it was "accelerat[ing] the Loan and declar[ing] the entire amount of the Obligations immediately due and payable" (NYSCEF # 16 at 1-2). That same day, Lender also circulated a demand notice asserting that, because Tenant notified Landlord that it had surrendered the Ground Lease, Guarantors were "now liable for the payment of the entire amount of the [Loan] pursuant to Section 1.2(b) of the [Guaranty] and Section 3.1(c)(xii) of the Loan Agreement" (NYSCEF # 17 at 1-2).
Lender maintains that, as of January 12, 2024, Borrower owes a total of $66,443,010.14 pursuant to the Loan Agreement (the Debt) (Sitman Reply aff ¶ 5).[FN5]
The Debt is based on the initial loan of $40,000,000.00 and inclusive of monthly accrued interest and default interest (id.). In support, Lender submits a copy of an accrual spreadsheet reflecting Lender's calculations of the amount of the Debt (NYSCEF # 130).
For its part, Sand Hollow disputes that a surrender occurred, although its papers largely focus on when the Ground Lease was terminated, not when it was surrendered (see Bracken aff ¶¶ 27-40). Specifically, Sand Hollow avers that on December 8, 2023, in response to Tenant's [*6]December 6 letter, Landlord sought confirmation that Tenant was "actually surrendering the property and not just giving notice" (id. ¶ 29; NYSCEF # 90 at 1). And although reply correspondence was not provided, it remains undisputed that four days later, Landlord issued the aforementioned "Notice of Default and Surrender of Lease" (see NYSCEF # 15). Nonetheless, Tenant allegedly continued to manage the Hotel (Bracken aff ¶ 30).
The next month, and, notably, after it circulated the Notice of Default and Surrender of Lease, Landlord inquired as to whether Tenant would "sign[] a short lease surrender document" to "formally severe [sic] our relationship" (NYSCEF # 91 at 1). From that point, between January 4, 2024, and January 16, 2024, the parties apparently negotiated a draft Surrender and Transfer Agreement that would have the effect of "terminat[ing]" the Ground Lease (see Bracken aff ¶¶ 32-35; NYSCEF # 92). However, on January 16, 2024, Landlord sent a Notice of Termination to Tenant in which Landlord "exercise[d] its option . . . to terminate and end the term of the [Ground] Lease on January 24, 2024" (NYSCEF # 95 at 2). In this Notice of Termination, Landlord reiterated that Tenant had "defaulted in its obligations to pay Basic Rent and Additional Rent" and had "abandoned the [Hotel and the Property] for a period exceeding seven (7) consecutive business days" (id. at 1).
Sand Hallow also apparently disputes that Borrower was insolvent as of December 6, 2023 (Bracken aff ¶¶ 41-44). To start, Sand Hollow notes it was "not news" that Borrower "lacked sufficient funds" to satisfy its obligations given that, since the Maturity Date of December 7, 2020, Borrower had not repaid the Loan (id. ¶¶ 41-42). Sand Hollow further notes that Lender was well aware that, instead of paying the Loan, Borrower and Sand Hollow were funding Tenant's ongoing obligations pursuant to the Ground Lease (see id. ¶ 42). Sand Hollow then contends that the "mere inability to pay current obligations as they become due does not show insolvency" (id. ¶ 43).
Lender Commencement of This Action and Its Subsequent Sale of the Ground Lease
On January 12, 2024, after issuing its acceleration notice and demand notice, Lender commenced this proceeding under CPLR 3213 (NYSCEF # 1-2). Lender moves for an order granting it summary judgment against Guarantors for the Debt, as well as, after an inquest, the costs of collection (including attorneys' fees and expenses) (NYSCEF # 2). Both Merchants and Sand Hollow attest that, at some point after bringing this action, Lender apparently assigned its rights under the Ground Lease to non-party Ian Reisner, another hotel owner and operator (Cohn aff ¶¶ 30-31; Bracken aff ¶¶ 11, 45). According to Sand Hollow, Lender specifically received $1,000,000.00 in consideration for this assignment, and it purportedly "stands to gain much more" (Bracken aff ¶¶ 45-46; NYSCEF # 80). Guarantors note that Lender never disclosed this assignment in its moving papers (see Cohn aff ¶ 32; Bracken aff ¶ 45).

 Discussion
In its motion, Lender argues that it has established its entitlement to summary judgment in lieu of complaint against Guarantors based on their failure to pay the Debt as required under the Guaranty (NYSCEF # 3 — MOL at 7-11; NYSCEF # 124 — MHI Reply at 1-3; NSYCEF # 141 — SH Reply at 7-10). Lender maintains that the Guaranty is an instrument for the payment of money only, that Guarantors are liable for the entire Debt, and that no material dispute of fact exist that would otherwise preclude an entry of summary judgment (see MOL at 7-9; MHI Reply at 3-11; SH Reply at 4-12).
Through separate submissions, Merchants and Sand Hollow both oppose Lender's application. In its opposition, Merchants avers that summary judgment should be denied because material issues of fact exist with respect to Lender's damages and potential limits on Merchants' liability (NYSCEF # 72 — MHI Opp at 3-12). Meanwhile, Sand Hollow contends that (1) Lender has failed to establish that the Guaranty is an instrument for the payment of money only containing an unconditional promise to pay a sum certain, and (2) material issues of fact exist as to whether (i) Lender is equitably estopped from enforcing the Guaranty, (ii) the Ground Lease was terminated on December 6, 2023, (iii) Borrower was insolvent on December 6, 2023, and (iv) there is a sufficient basis for Lender's claimed damages [FN6]
(NYSCEF # 97 — SH Opp at 8-20).
CPLR 3213 permits "actions based upon an instrument for the payment of money only to be commenced with a motion for summary judgment rather than a complaint" (Banco Popular N. Am. v Victory Taxi Mgt., 1 NY3d 381, 383 [2004]). Such a motion allows for "quick relief on documentary claims so presumptively meritorious that a formal complaint is superfluous, and even the delay incident upon waiting for an answer and then moving for summary judgment is needless" (Cooperative Centrale Raiffeisen-Boerenleenbank, B.A.., "Rabobank Intl.," NY Branch v Navarro, 25 NY3d 485, 491-492 [2015]). A guaranty qualifies as an instrument for the payment of money if it unconditionally promises payment (see Bank of Am., N.A. v Filho, 203 AD3d 594, 594 [1st Dept 2022]).
To establish entitlement to summary judgment in lieu of complaint, a plaintiff must make a prima facie showing that the instrument sued upon contains "an unconditional promise to pay a sum certain . . . due on demand or at a definite time" (Weissman v Sinorm Deli, Inc., 88 NY2d 437, 444 [1996]), and that defendant failed to pay in accordance with those terms (Zyskind v FaceCake Mktg. Tech., Inc., 101 AD3d 550, 551 [1st Dept 2012] ["To establish prima facie entitlement to summary judgment in lieu of complaint, a plaintiff must show the existence of a promissory note executed by the defendant containing an unequivocal and unconditional obligation to repay and the failure of the defendant to pay in accordance with the note's terms"]). Thereafter, the "burden shifts to the defendant to establish, by admissible evidence, the existence of a triable issue with respect to a bona fide defense" (Navarro, 25 NY3d at 492, quoting Cutter Bayview Cleaners, Inc. v Spotless Shirts, Inc., 57 AD3d 708, 710 [2d Dept 2008]).
Here, as explained below, Lender has met its burden under CPLR 3213 and Guarantors have failed to establish the existence of a triable issue of fact to preclude summary judgment.
I. Lender Has Met Its Prima Facie Burden under CPLR 3213
In support of its application, Lender submits (1) the Guaranty in which Guarantors "irrevocably and unconditionally guarantee[d]" to Lender the payment of the Guaranteed Obligations (Guaranty §§ 1.1-1.2), and (2) the underlying Loan Agreement, which sets forth the qualifying events that trigger payment under the Guaranty (see LA § 3.1 [c][vi], [xii]). Lender further submits (a) correspondence from Borrower in which it represented to Lender that [*7]Borrower "lacked sufficient funds to satisfy its obligations in connection with the [Hotel and the Property]" and that Tenant would be "tendering the Leasehold to the ground lessor" (see NYSCEF # 10); (b) follow-up correspondence from Borrower that represented that, "[e]ffective immediately," Tenant was "surrendering the Property to [Landlord]" (NYSCEF # 14 [emphasis added]); and (c) a Notice of Default and Surrender of Lease from Landlord (NYSCEF # 15). Finally, Lender submits its demand letters establishing Borrower's defaults under the Loan Agreement and the subsequent triggering of Guarantor's Guaranteed Obligations, Guarantor's failure to perform under the Guaranty aside from making certain interest payments, and the amount of Debt due and owing from Borrowers and Guarantors (see NYSCEF #s 11-13, 16-17; Sitman aff ¶¶ 11-12, 22; Sitman Reply aff ¶ 2; NYSCEF # 130). Based on these submissions, Lender has clearly met its prima facie burden on its motion for summary judgment in lieu of complaint (see DB 232 Seigel Mezz LLC v Moskovits, 223 AD3d 610, 611 [1st Dept 2024] ["Plaintiff satisfied its prima facie burden on its CPLR 3213 motion for summary judgment in lieu of complaint by submitting the guaranties executed by defendants, the underlying loan agreement, and its demand letters establishing the borrower's default and defendants' failure to perform under the guaranties"]).
In its opposition, Sand Hollow advances three primary challenges to whether the Guaranty is properly the subject of this CPLR 3213 motion. None are availing. First, Sand Hollow asserts that the Guaranty requires reference to outside proof to establish Guarantors' underlying obligations and their subsequent breach thereof (SH Opp at 8-10). The court disagrees. It is, of course, true that relief under CPLR 3213 is generally unavailable where "outside proof is needed" (see Weissman, 88 NY2d at 444). This rule, however, does not extend to those circumstances where "documentary evidence" confirms a "simple, readily verified fact[s]" offered to establish the occurrence of an "event of default" (see Nimble Ventures, LLC v Graves, 192 AD3d 514, 516-517 [1st Dept 2021]). That is precisely the case here.
As noted above, an Event of Default under the Loan Agreement triggers in certain delineated circumstances set forth in the Loan Agreement, including when Borrower "admit[s], in writing . . . its insolvency or inability to pay its debts as they become due," and when there is "any surrender by Borrower . . . of the leasehold estate created by the Ground Lease" (LA § 3.1 [c][vi], [xii]). The existence of such admissions of insolvency and Borrower's surrendering of the leasehold estate, are readily verifiable facts that are, here, confirmed by the documentary evidence (see NYSCEF #s 11-13, 16-17; Sitman aff ¶¶ 11-12, 22). Sand Hollow may dispute whether the Ground Lease was terminated (as opposed to surrendered), or whether Borrower was actually insolvent. But it does not seriously challenge that Borrower did, in fact, admit "in writing" to its insolvency and inability to pay its debts or that Borrower did, in fact, explicitly represent to Landlord that it was surrendering, "[e]ffective immediately," the Ground Lease. Consequently, Lender's reliance on these communications to establish the triggering of Guarantors' payment obligations under the Guaranty is not a basis to deny the CPLR 3213 relief that it now seeks (see 27 W. 72nd St. Note Buyer LLC v Terzi, 194 AD3d 630, 632 [1st Dept 2021] ["[T]he fact that plaintiffs had to submit an affidavit saying the DSCR conditions had not been met does not disqualify the guaranties as instruments for the payment of money only as 'simple proof of nonpayment or a similar de minimis deviation from the face of the document' [*8]may be offered to establish a prima facie case under CPLR 3213"]).[FN7]

Second, Sand Hollow appears to contend that the Guaranty is not a promise for the payment of money only because it contains purported additional obligations (SH Opp at 9). But there are only two Guaranteed Obligations to which Guarantors agreed: (1) payment of "any Losses arising out of or in connection with the occurrence of an event set forth in Section 3.1 (b) of the Loan Agreement," or (2) payment of "the entire amount of Debt from and after the occurrence of any event set forth in Section 3.1(c) of the Loan Agreement" (Guaranty § 1.2; LA § 3.1 [b]-[c]). And both of these Guaranteed Obligations are for the payment of money only. As a result, given Guarantors' failure to comply with these payment obligations, it was appropriate for Lender to move for judgment on the Guaranty under CPLR 3213 (see DB Auraria, LLC v Nelson, 228 AD3d 424, 425 [1st Dept 2024] ["Contrary to their contentions, the guaranty here is an instrument for the payment of money only as it unconditionally guarantees the borrower's obligation to pay its debt"]). At any rate, even if the Guaranty also contained other nonmonetary obligations—and to be sure, Sand Hollow identifies none—such obligations were not "conditions precedent to [Guarantors'] obligation to pay upon a payment default by" Borrower (see Fortress Credit Corp v Cohen, 235 AD3d 553, 553 [1st Dept 2025]).
Finally, Sand Hollow maintains that the Guaranty is not an instrument for the payment of money only because Section 1.3 of the Guaranty states that the Guaranteed Obligations "may be increased or reduced" (SH Opp at 11-12, quoting Guaranty § 1.3). Sand Hollow asserts that this means that the Guaranty is not for payment of a "sum certain" (id. at 12). This contention is unavailing. Pursuant to the Guaranty, the occurrence of an event delineated in Section 3.1(c) of the Loan Agreement triggers "payment of the entire amount of the Debt" by Guarantors. Although the "entire amount of the Debt" is not set forth in the Guaranty, it is, as Lender correctly notes, nonetheless readily ascertainable from Lender's submission, which is all that is needed to qualify for CPLR 3213 relief (see Webster Business Credit Corp. v Durham, 29 Misc 3d 1206[A], at *2-3 [Sup Ct, NY County, 2010], citing Mfrs. Hanover Trust Co v Green, 95 AD2d 737 [1st Dept 1983] ["even a guarantee that does not set forth a sum certain may be the proper subject of § 3213 relief"]).
II. Guarantors Have Failed to Raise Triable Issues of Fact of a Defense or Otherwise Establish a Prima Facie Entitlement to Summary Judgment
As the above makes clear, Lender has made a prima facie showing of its entitlement to summary judgment in lieu of complaint, and neither defendant has offered any basis to disturb this conclusion. Hence, the burden now shifts to Guarantors to raise a triable issue of fact with respect to a bona fide defense (see Zyskind, 101 AD3d at 551). Guarantors have failed to meet this burden.
At the outset, Merchants and Sand Hollow claim that material issues of fact exist [*9]regarding Lender's damages calculation (SH Opp at 13-14; MHI Opp at 5-9). For example, they both assert that Lender failed to demonstrate how it calculated the Debt (MHI Opp at 5-6; SH Opp at 13-14). And Merchants further maintains that Lender did not articulate how the interest rate applied to the Loan was calculated or whether other costs are included in the Debt (MHI Opp at 5-6). Put simply, these contentions are without merit. In its moving papers, through an affirmation submitted by an individual with personal knowledge of the facts, Lender disclosed the amount of principal outstanding and then provided a total amount of debt due and owning, inclusive of interest (Sitman aff ¶¶ 3, 22). To the extent that more explanation was required to establish the Debt based on Guarantors' oppositions, Lender then properly supplemented its calculations on reply [FN8]
to (1) clarify the total amount of funds that were ultimately disbursed to Borrower, (2) demonstrate how it calculated the interest due and owing under the Loan Agreement, and (3) revise the amount of the Debt owed by Guarantors upon crediting them with an additional interest payment that was omitted from Lender's original calculation (see Sitman Reply aff ¶¶ 2-5; NYSCEF #s 129-130). Because Guarantors do nothing more than criticize the level of detail offered by Lender in support of its calculations, they fail to raise a material issue of fact with respect to the calculations damages that would warrant a denial of Lender's motion.
Relatedly, both Merchants and Sand Hollow assert that a material issue of fact exists as to damages based on Lender's apparent failure to disclose its assignment of the Ground Lease for $1,000,000.00 (see SH Opp at 14; MHI Opp at 9). Merchants, in particular, avers that "[d]iscovery is necessary to ascertain what happened to the collateralized Lease and what revenue was derived by [Lender] from its assignment" (MHI Opp at 9). Neither Merchants nor Sand Hollow, however, explain how this sale of collateral—which occurred after Tenant surrendered the Ground Lease and after Lender made its demand under the Guaranty—impacts the Guaranteed Obligations Lender now seeks to enforce against Guarantors. This is particularly problematic because, as Lender aptly notes (see MHI Reply at 9-10), the Guaranty repeatedly establishes that any disposition of collateral securing the Loan would not impact Guarantors' obligations under the Guaranty. For example, under the Guaranty:
(1) Lender was not required to "exhaust any remedies available to Lender against any collateral which shall ever have been given to secure the Loan" or "resort to any other means of obtaining payment of the Guaranteed Obligations";
(2) Guarantors' liability was "in no way be limited, expanded or impaired by . . . the release or substitution in whole or in part of any collateral or security for the Obligations"
(3) the Guaranteed Obligations would "not be released, diminished, impaired, reduced or adversely affected by . . . [a]ny release, surrender, exchange, subordination, deterioration, waste, loss or impairment . . . of any collateral, property or security at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Obligations" (see id. § 2.7)
(Guaranty §§ 1.6, 1.8[H], 2.7). Succinctly stated, Lender's alleged assignment of the Ground Lease does not warrant denial of the motion.
As their next argued basis for denial of summary judgment, both Merchants and Sand Hollow rely (albeit, for different reasons) on the occurrence of the purported forbearance obligations (MHI Opp at 10-11; SH Opp at 14-15). For its part, Merchants asserts that material issues of fact exist as to whether Lender and Borrower (under the purported control of Roche) altered the Loan Agreement to provide for an additional guarantor (see MHI Opp at 10-11). Yet, aside from pointing to a stray reference to a "Mailman Trust guaranty" in an email (NYSCEF # 69), Merchants fails to offer any non-speculative basis for its belief that there was any type of modification of the Loan Agreement or Guaranty. Merchants has, as a result, failed to raise a material issue of fact arising out of any purported forbearance negotiations that would preclude summary judgment (see Cillo v Resjefal Corp., 16 AD3d 339, 340 [1st Dept 2005] [holding that "[i]n order to defeat a motion for summary judgment, plaintiff was required to present a material issue of evidentiary fact comprised of more than just mere speculation or conjecture"]).
Sand Hollow, meanwhile, points to the existence of the forbearance negotiations to assert that Lender is equitably estopped from collecting monies (see SH Opp at 14). This contention is meritless. Relying on a draft forbearance agreement and what is essentially its principal's say so, Sand Hollow asserts that it justifiably relied on Lender's representations that it would not seek to enforce the Guaranty against it during forbearance negotiations (see Bracken aff ¶ 24). Yet, as noted above, the Guaranty explicitly states that "[n]o modification or waiver of any provision of this Guaranty, nor consent to departure therefrom, shall be effective unless in writing" (Guaranty § 6.1). Accordingly, given this express contractual language in the Guaranty, Sand Hollow has no basis to argue that it justifiably relied on any purported an assurance by Lender that it would not enforce the Guaranty (see Bank of NY v Spring Glen Assocs., 222 AD2d 992, 994 [3d Dept 1995] [rejecting estoppel argument where defendants "could not have justifiably relied on such an assurance[] given the express language in the guarantees declaring that no modification or waiver of their terms"]; accord Geico Ins. Co. v Silverio, 171 AD3d 924, 925 [2d Dept 2019] [rejecting justifiable reliance defense "in light of the express language in the insurance policy that the terms and provisions of the policy could not be waived or changed except by an endorsement"]). And because Sand Hollow otherwise fails to offer any basis to conclude that Lender's conduct throughout the purported forbearance negotiations was somehow contrary to the terms of the Loan Agreement or the Guaranty (see Eujoy Realty Corp. v Van Wagner Communications, LLC, 73 AD3d 546, 548 [1st Dept 2010] [rejecting applicability of equitable estoppel defense where agreement included "no oral modification" and "no waiver" clauses, and record contained no evidence of conduct by plaintiff that was incompatible with agreement as written]), its equitable estoppel defense is easily rejected.
Finally, in its last salvo to avoid summary judgment, Sand Hollow asserts that there are material questions of fact as to whether Borrower was insolvent on December 6, 2023 and whether the Ground Lease was terminated on December 6, 2023 (SH Opp at 13, 15-16). The court is unpersuaded by either basis. Starting with the issue of insolvency, the Guaranty and Loan Agreement are clear that Guarantors irrevocably and unconditionally guaranteed the payment of the entire amount of Debt after the occurrence of, among other things, Borrower "admitting, in writing . . . its insolvency or inability to pay its debts as they become due" (LA § 3.1 [c][vi] [emphasis added]). And it is undisputed that, by letter, dated December 4, Borrower represented, in writing, that it "lacked sufficient funds to satisfy its obligations in [*10]connection with the [Hotel] and under Loan Agreement" (NYSCEF # 10 at 1). Hence, the December 4 letter plainly constitutes the requisite written admission required to trigger an Event of Default under the Loan Agreement. Whether or not, as Sand Hollow argues, "mere inability to pay current obligations as they become due" constitutes "sufficient evidence of insolvency" is wholly irrelevant (see SH Opp at 15).
As for Sand Hollow's reliance on the Ground Lease's alleged termination, it is evident from the record that Guarantors separately guaranteed the payment of the Debt "upon the termination of the Ground Lease" or, among other things, "any surrender by Borrower . . . of the leasehold estate created by the Ground Lease" (LA § 3.1 [c] [xii] [emphasis added]). In other words, surrender and termination represented two distinct bases for Guarantors' Guaranteed Obligations to trigger under Sections 1.1 and 1.2 of the Guaranty. Consequently, if, as was the undisputed case here (see NYSCEF # 14 at 1; NYSCEF # 15 at 1-2), there was an unequivocal surrender by Tenant, it is of no consequence to Guarantors whether or when the Ground Lease was subsequently terminated. For this reason, Sand Hollow's reliance on the date of Ground Lease's termination to avoid summary judgment entirely misses the mark.

 * * *
In sum, Lender has met its prima facie burden of establishing its entitlement to summary judgment in lieu of complaint, and neither Merchants nor Sand Hollow raises any triable issue of fact with respect to a bona fide defense in response.[FN9]
Lender's motion for summary judgment in lieu of complaint is therefore granted with respect its claim for $66,443,010.14, and Lender's motion for a pre-judgment order of attachment is deemed academic and denied as moot (see 212 Inv. Corp. v Kaplan, 16 Misc 3d 1125[A], at *18 [Sup Ct, NY County, 2007] [denying motion for pre-judgment attachment of assets as moot upon granting motion to confirm monetary arbitration award in favor petitioners]).
III. Lender's Request for Costs of Collection
Lender separately asserts a claim for its costs of collection, which it requests that the court sever for an inquest (see MOL at 10-11). Pursuant to Section 1.9 of the Guaranty, Guarantors agreed to pay "all out-of-pocket costs and expenses (including court costs and attorneys' fees and costs) incurred by Lender . . . in the enforcement hereof or the preservation of Lender's rights hereunder" in the event that Guarantors "should breach or fail to timely perform any provisions of th[e] Guaranty" (Guaranty § 1.9). Because summary judgment has been granted as to Lender's claim for payment of the Debt under the Guaranty, the court agrees that Lender is also entitled to its reasonable cost of collection under the plain terms of the Guaranty (see Bronson v Jacobs, 204 AD3d 531, 532 [1st Dept 2022] [granting request for reasonable attorneys' fees and cost upon showing of entitlement under promissory note]). The court enters judgment in the amount of $66,443,010.14 and will sever Lender's cost of collection claim for a separate inquest (see e.g., Starship Holdings, LLC v Maxben Holdings, LLC, 2025 WL 893115, at *2 [Sup Ct, NY County, Mar. 18, 2025] [severing request for attorneys' fees pursuant ot motion under CPLR 3213 for an inquest into fees]; Itria Ventures LLC v Singh Oil Corp., 2023 [*11]WL 3679318, at *3 [Sup Ct, NY County, May 26, 2023] [severing claim for fees for a separate inquest upon plaintiff's request]).

 Conclusion
For the foregoing reasons, it is hereby
ORDERED that plaintiff 510 42nd Street Lender LLC's motion, pursuant to CPLR 3213, for summary judgment in lieu of complaint is granted in its entirety; and it is further
ORDERED that defendant Sand Hollow Resort LLC's cross-motion for summary judgment is denied; and it is further
ORDERED that plaintiff 510 42nd Street Lender LLC's motion, by order to show cause, for a pre-judgment order of attachment against Sand Hollow, as well as pre-judgment disclosure, is denied as moot; and it is further
ORDERED that the Clerk of the Court is directed to enter judgment in favor of plaintiff 510 42nd Street Lender LLC as against defendants Merchants Hospitality, Inc. and Sand Hollow Resort LLC in the amount of $66,443,010.14, together with interest at the statutory rate accruing from the date of this decision and order, as calculated by the Clerk of the Court; and it is further
ORDERED that plaintiff 42nd Street Lender LLC shall have judgment against defendants Merchants Hospitality, Inc. and Sand Hollow Resort LLC as to liability for reasonable attorneys' fees and expenses incurred by plaintiff in connection with its motion, with an amount to be determined based on additional submissions, and this issue is hereby severed for an inquest before a Special Referee to determine the amount of fees and costs to be awarded; and it is further
ORDERED that counsel for plaintiff shall, within 30 days from the date of this order, serve a copy of this order with notice of entry, together with a completed Information Sheet, upon the Special Referee Clerk in the General Clerk's Office (Room 119), who is directed to place this matter on the calendar of the Special Referee's part; and it is further
ORDERED that such service upon the Special Referee Clerk shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-Filing" page on the court's website); and it is further
ORDERED that counsel for plaintiff is directed to serve a copy of this order, together with notice of entry, upon defendants and the Clerk of the Court within 10 days of this order.
DATE 4/02/2025
MARGARET A. CHAN, J.S.C.

Footnotes

Footnote 1:The Loan Agreement details how to calculate this LIBOR Rate (LA § 1.1, "LIBOR Rate").

Footnote 2:Merchants and Roche also executed an operating agreement through which Merchants relinquished control of its majority ownership in the joint venture to Roche (Cohn aff ¶¶ 11-12, 14).

Footnote 3:Guarantors also entered into a Limited Payment Guaranty with Lender in which they "irrevocably and unconditionally guarantee[d] to Lender . . . the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable" up to a $2,000,000.00 payment cap (NYSCEF # 64 §§ 1.1-1.2). This payment cap did not "limit or affect the liability of Guarantor with respect to the obligations arising under the Recourse Guaranty" (id.).

Footnote 4:Specifically, Lender asserts that Borrower made interest payments of in the amount of (i) $500,000.00 on or about June 9, 2021, (ii) $33,403.94 on or about June 9, 2022, (iii) $152,152.61 on or about June 9, 2022, (iv) $250,000.00 or about August 9, 2022, and (v) $222,721.62 or about December 9, 2023 (Sitman Reply aff ¶ 3; NYSCEF # 130 at 1-2).

Footnote 5:Lender's initial motion papers stated that the amount due from Borrower and Guarantors was $66,665,731.81. On reply, however, Lender explains that this figure inadvertently omitted the impact of Borrower's fifth and final interest payment (Sitman Reply aff ¶ 5).

Footnote 6:Sand Hollow also cross-moves for summary judgment on largely the same grounds. To prevail, Sand Hollow must make a prima facie showing of its entitled to summary judgment (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). Failure to do so mandates denial of the cross-motion (see Ayotte v Gervasio, 81 NY2d 1062, 1063 [1993]).

Footnote 7:To the extent that Sand Hollow objects to Lender's reliance on obligations in the Loan Agreement, the First Department has made it clear that "summary judgment in lieu of complaint is appropriate 'even though the obligation was referenced by underlying agreements'" (Museum Building Holdings, LLC v Schreiber, — NYS3d —, 2025 WL 836515, at *1 [1st Dept Mar. 18, 2025]).

Footnote 8:Guarantors criticize Lender for submitting its calculations of the Debt as part of its reply papers (see NYSCEF #s 146, 148). But Lender was permitted to supplement its papers in this matter to respond to Guarantors' oppositions (see White Oak Global Advisors, LLC v Clarke, 2025 WL 880542, at * [SD NY, Mar. 21, 2025, No. 24-cv-2128 (JSR)] [observing that it would be "counterintuitive if White Oak were then foreclosed from submitting evidence responsive to the arguments raised by defendants"]).

Footnote 9:By this same foregoing reasoning, Sand Hollow has failed to establish its entitlement to summary judgment against Lender